Case number four for argument today is Close Armstrong v. Trunkline Gas. Mr. Cerisi. May it please the Court. I'm Sean Cerisi on behalf of the landowners, Close Armstrong, LLC, and Randy and Jamie Dixon. The landowners contend that the district court incorrectly decided that Indiana law does not require a floating easement to be fixed based upon the conduct of the parties. And the landowners contend that the resolution of that question is best suited for certification to the Indiana Supreme Court. This case involved two utility easements that the predecessors entitled to my clients granted to Trunkline Gas Company back in 1959 for construction of a pipeline that runs from Texas to Michigan. And those easements were written as what are known as floating easements. Originally in this litigation, Trunkline argued that it should be read as an express easement to the entirety of the property, but that's an issue that the district court disposed of in the first summary judgment ruling that they were, in fact, floating easements. And that's an issue that Trunkline has not filed a cross-appeal on in this case. And so as floating easements, Indiana law subjects them to be fixed based upon the conduct of the parties, and that's kind of where we're at today. As we view the district court's decision, it really looked solely to the text of the easements, which granted a lot of future rights to Trunkline to install additional pipelines and maintain the pipelines, move them, and things of that nature. But there's abundant evidence that through their conduct over the course of nearly 60 years that Trunkline had consented to restrict its easement to a swath of 66 feet around the pipeline that it was actually laid. In fact, the company's standard operating procedures that were in place through the early 90s identified that easements would be treated as to be the width that's typically used in a geographical area. Both of these properties are adjacent in the same geographical area. Their policy standard operating procedures also said that they would only install additional pipelines in instances where they could be relatively parallel to an already laid pipeline. And so the position that Trunkline has now taken throughout the course of this more than six year litigation is to the contrary, that they have a very expansive easement rights that would really render the serving in the states of my clients beneficial enjoyment of the remainder of their property to be quite limited. I wanted to ask you about that. Do the landowners stand to get nothing from the U.S. Fish and Wildlife Service because of Trunkline's easement, because they want this wetlands conservation benefit or deal, or do they stand to get less? So at this point, the position of USDA is that they will not grant the conservation easement because of... At all? At all, yes.  Yeah. There was some evidence in the record of another property owner that sometime prior to this that's within the vicinity of the same county that USDA did grant a conservation easement to, but the policy at least now of USDA is that they would not with this restriction. So we see that the Indiana Supreme Court has, as recently as 2018, spoken to the idea of floating easements and that they can be fixed by practice. Just how that occurs, and particularly in the utility context, is a little bit unclear. We think it would be beneficial to send this case to the Indiana Supreme Court for that consideration. There's some cases from the 80s and 90s that involved Panhandle, which is a related company to Trunkline, that discussed easements, and one of those is the Tishner case, which the parties have had quite divergent views of that case as well as with the district court. We find that the Court of Appeals of Indiana in that case did fix a multi-pipeline easement. That was an easement that would allow for the construction of two pipelines, and it affirmed that... It also looked, as it did in the Rees case, that it looked to the judicial construction of how other easements in the geographical area have been limited, and affirming that a 66-foot wide swath was appropriate there. It also limited future rights to maintenance, replacement, increasing size of the pipeline to that 66-foot wide swath. The district court viewed Tishner, and I think Trunkline, that the court did not do that, that in fact it only defined the scope of the presently used rights for the existing pipeline. And that's what the district court's reading of Indiana law in our case sent us toward a trial where, under the district court's conception of the law, we would just be arguing over what is the present width of the easement for the now-in-place use of the 100-line pipeline. But should Trunkline have future needs tomorrow, a year from now, according to the district court's understanding of the law, they would be able to move that easement and expand it even broader. And just in our view, that level of uncertainty is not what is intended under Indiana law, and they're fixed by practice doctrine, and we think there would be great benefit to send this back or down to the Indiana Supreme Court for their consideration. Well, if hundreds of landowners are facing a similar issue, why is there such a dearth of case law? Yeah, our position is just the fact we originally filed this in Stark County, Indiana court, as far as Close Armstrong's case, and it was immediately, due to diversity jurisdiction, removed to federal court. That prompted the Dixons, who were represented by a counsel from their title insurer at that time, to directly file their declaratory judgment action in federal court. And we think it's just a difficult thing for small property owners to litigate against a large utility company in federal court. And we view this as a very important decision that, you know, because of that lack of litigation by individual property owners, the district court's decision, which we think is an outlier and gets Indiana law wrong, could be utilized by the pipeline and other utilities kind of as a hammer against other landowners as the reading of their blanket easements in the future. So we think it's very important to get this right and to send it to the Supreme Court for their consideration. I'm going to reserve the rest of my time for rebuttal. Thank you. Thank you, Mr. Cerici. Mr. Verchey. May it please the court, my name is Ryan Verchey, and I'm here on behalf of Trunk Line Gas Company. I would like to make three main points today. First of all, there is no need to certify this case because the fixed by practice doctrine simply does not apply to the facts in this case or to rights that are not yet exercised. So there would be nothing for the Indiana Supreme Court to decide in this case. Secondly, what appellants are really trying to do here is to use equity to rewrite an unambiguous express contract, which Indiana law prohibits. Instead, Indiana law provides that contracts are to be construed, and if they're unambiguous, they're to be enforced according to their terms. Third, appellants are ignoring the elephant in the room, the undisputed expert evidence that Trunk Line needs at least 141 feet in width to safely access, maintain, excavate, replace, repair, etc. It's 100 line and any other pipeline in this area of the property due to the wet and mucky soils. In addition, these pipelines cannot be closer than 50 feet apart for safety reasons, for the same reasons in these mucky soils, and that's evidence that appellants just simply disregard in asking this court to fix all of Trunk Line's rights to a single 66 foot wide corridor. How does Indiana law decide this case? It's very clear. If you look at the common thread in fixed by practice cases, they're usually unwritten rights, usually by necessity. They're already fully used. For instance, a driveway, we're driving across it for many years, it's not going anywhere, we don't need more. There's no consent to relocation, and there's evidence on that property to support fixation when it wouldn't be contrary to the purpose of the easement. Here, we have layers of rights which appellants continually ignore. We have the right to install the 100 line, which has been installed and maintained, etc. We have the right to install additional non-parallel pipelines, which doesn't jive with appellant's 66 foot theory. We also have the right to relocate the 100 line in the future, and the district court really honed in on that language, where the landowner's predecessors gave their express consent that this can be relocated, which takes it completely out of any fixed by practice case in Indiana. Desperado all the way back to dungeon. So what do we have here? One case that I wish the briefing would have focused more on is Burrow v. Terre Haute. It's an 1886 Supreme Court case in Indiana where there was a blanket easement, a floating easement, that granted the right to install a railroad and have a 99 foot wide easement across that property. What the Supreme Court said was that that easement granted a floating right to select a route and to use it, and that that right was enforceable, it was vested, and it couldn't be defeated by actions of the servient landowner. Here what we have is we have floating easement rights, multiple layers of rights, which are vested rights to select a location for the 100 line, for the future pipelines, and if needed, to move the 100 line. And that can't be defeated by the appellants coming in and saying, well, we think you should be limited to 66 feet for everything, especially when the evidence shows that that would frustrate the entire purpose of the pipeline easement. So what does Tishner do? Tishner comes in and says, here is the reasonable necessary doctrine. And fixed by practice is a doctrine that says, let's look at past use, whereas reasonable necessary says, what do you need? And in that case, the pipeline company had three different projects. First, it had to do some sort of project. Secondly, there was a casing they had to dig up and repair. And then a couple years later, they had to make the pipeline even wider, even bigger. And each time they used more of the property. And that court didn't say, okay, what did you use the first time? Well, that's all you ever get. Or what did you use on this other property? That's all you ever get. What that court said was, what do you need? What is reasonably necessary? And that's what protects appellants in this case is that if in the future at some point Trunkline does move the 100 line or install an additional pipeline, the doctrine of reasonable necessity, which is referenced by the Burrough case as far back as 1886, states that Trunkline has to have a reasonable need for doing so, and its location will be determined by what is reasonably necessary at that time. That's the protection. The protection is not to look at an easement and say, well, we don't like these four rights, so we're going to ignore them, and let's fix everything to what's been used on this property and other properties on easements that don't apply to these properties. Indiana law is clear. An easement is a contract between two parties. It applies to a specific property. If the Indiana Supreme Court were to hold, as appellants request, or if this court were to hold, that all blanket easements must be fixed. All floating easement rights must be fixed. What's going to happen is you're going to have every landowner in Indiana who has an easement like this come into court and say, Your Honor, here's what I think it should be fixed to. Farmer Jones got this. Mr. Smith got that. We want this. And that's just going to happen throughout Indiana. Right now we have settled law, we have settled precedent, and we have a case where the facts of the easement, the facts of the expert testimony, don't square with the fixed-by-practice doctrine. So we would posit that there's nothing for the Indiana Supreme Court to have to decide in this case in that respect and that certification would be unnecessary. Although you're certainly not taking the position that a party that doesn't move to certify in the district court waives the opportunity for certification on appeal, are you? Absolutely not. We are not taking that position. The cases first say that we, as in whether it's the Seventh Circuit or the proverbial federal judiciary, once those costs have been sunk, once the first federal decision on the matter has been issued, then it could be untimely. What we're not saying is that because we are now on appeal in the Seventh Circuit, it is now untimely. But if you look at the multiple rounds, I believe there were three rounds of summary judgment at the district court level, 66 pages of opinions, our position now would be this is nothing more than a request for a different appellate court to make a ruling and to try to get out of the district court's decision. And if I may address a question that Your Honor had asked of appellants as to whether the USDA has simply declined to put this property in a conservancy. Both of these properties have been in multiple conservancy programs for decades. Forestry, wetlands, the properties are still preserved as wetlands. They're still being used for that purpose. So it's not as if this easement is preventing that use. What triggered this case was that the USDA has this penultimate program of a WRE, wetland reserve easement, that wants to take everything off the title, wants to clear title and have complete control and be able to impound water and control flowage and things like that and drainage. First of all, that's incompatible with a pipeline operation. And secondly, the USDA's own requirement is that they can't have any sort of easement rights that are superior to them in time, first in time, first in right, that would prevent a program like that from having its full benefits. So it's not as if Trunk Line came in and said, you can't have this there, and it's not as if appellants have been unable to use their property fully for this purpose. They have just tried to get into a different program. Are they being compensated for the programs that they are already in? Yes, Your Honor. Yes, Your Honor. I believe it's $25,000 or so a year for Close Armstrong, and I can't remember the amount for Dixon. So there is compensation for those programs. Those are more of like a lease, you know, 10-year terms, 15-year terms, whereas the one they want is perpetual. And the irony of what it would do is it would basically lock this property down forever from future development and things like that. So they would be swapping one blanket easement that they sold in 1959 for another blanket easement, the one they sell in 2024, simply for a dollar difference. Turning to Desperado, the 2018 Supreme Court case, it's a fixed-by-practice case. The court went through the fixed-by-practice doctrine very minimally. It had a reason to find that the easement was fixed. It was a drainage easement on a plat. It was delineated by a dotted line. The plat was drawn to scale. The party wanted to relocate it. The Supreme Court said you can't do that. It's been there. It's delineated by a line. You can't. It's fixed. And also, even if it wasn't fixed, you have these four factors that we look at to determine whether or not we should allow this to become fixed unilaterally or if we should adopt the third restatement's rule where, you know, the parties can see what's reasonable. And the court said, no, we need to have consistent outcomes. We need to hold the properties or the parties to the benefit of whatever the agreement was at the beginning. That was a single-use easement. It had been fully used, and you can't simply relocate it unilaterally. The court also held that they need to avoid judicial takings in that sort of circumstance. If you fix an easement that, for instance, in our case, shouldn't be fixed, has future rights that haven't been exercised, there's no facts to fix it based on yet. What you would be doing is you'd be effectuating a judicial taking of that easement, contrary to what the deal was back in 1959. And then lastly, what the Desperado court said was that the policy factor they applied is that it secures economically efficient outcomes. In this particular case, they acknowledged that if the parties want to, they can contract around the common law, which is what happened here. You have the common law of floating easements. You have the common law of fixed by practice. Both go back to before 1959 when this contract was entered into. But what this contract shows is that the parties contracted around those doctrines and said, this is something that you can relocate in the future. These are nonparallel pipelines, whereas other easements, such as the Tishner easement, said it was a parallel pipeline. And respectfully, there's nothing in the Tishner opinion that ever addressed second pipelines, future rights, where that second line might be laid. It's really reading aloud into that opinion to say that, oh, they fixed the future pipeline. They didn't. What they also didn't do is consider evidence of other properties. All they did was say, hey, we have the Cerise case that also farms 66 feet, and therefore that supports its reasonableness. I see my time is up unless your honors have any additional questions. Thank you, counsel. Anything further, Mr. Cerise? Yes, I think I would point the court back to our analysis of the Tishner case in our briefing. I think that it is apparent that there was a limitation to the 66-foot-wide swath there. And as we noted in the briefing, I think the expert analysis is irrelevant here. If you look to the Supreme Court's case in Dudgeon from 1902, once a way is selected, it doesn't matter if it later becomes inconvenient or because it's too wet, too narrow, too steep. We had our own expert that by the time we got to the trial and we realized that under the district court's conception of the law, it really wouldn't matter for us to put this expert on, that we agreed that we weren't going to post him. But he said that many pipelines could be laid within the 66-foot swath. So we don't agree with the position that this was a contracting around the law of fixed by practice. We think that not attacking the consideration for the easements at all, but if you look to the base consideration for these easements back in 1959 was $1. If the folks thought that they were basically giving an easement to the entirety of their property, which although the district court says that it's a floating easement, its conception of what that is under this language is really in practice a easement to the entirety of the property. We would contend that no reasonable landowner would have thought that they were going to strike that deal, and they struck the deal for such little consideration because they understood that the law would fix that to a reasonable width. There's abundant evidence in the record, including the attorney Orville Nichols, who negotiated many of these easements on behalf of Trunk Line, who later issued title opinions to other folks in the region that identified and delineated this easement being in a fixed area. The district court did not address any of that evidence, and just in a footnote says that the judge did not address it because they don't change the result today. That was basically, we contend that this extrinsic evidence is, under the fixed by practice doctrine, is essential to show what the subsequent agreement of the parties was, and that is evidence of that agreement that's been borne out over 60 years of conduct between the parties. So we would respectfully request the court to certify the issue to the Indiana Supreme Court or alternatively to reverse the grant of summary judgment. Thank you. Thank you, counsel. Case is taken under advisement.